# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KIM LAUGA** | **CIVIL ACTION** |
| **VERSUS** | **NO: 16-14022** |
| **APPLIED CLEVELAND HOLDINGS, INC., ET AL** | **SECTION: "H"(3)** |

## ORDER AND REASONS

Before the Court are cross-motions for summary judgment by Plaintiff Kim Lauga (Doc. 81) and Defendants Metropolitan Life Insurance Company (Doc. 85) and Applied-Cleveland Holdings, Inc. and Applied Consultants, Inc. (Doc. 87). For the following reasons, Plaintiff's Motion is DENIED and Defendants' Motions are GRANTED.

## BACKGROUND

This action arises from the denial of life insurance benefits under a group life insurance policy ("the Plan") governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). Plaintiff Kim Lauga's husband, Glenn Lauga ("Glenn"), purchased life insurance coverage as part of the benefits offered by

1

his employer, Defendants Applied-Cleveland Holdings, Inc. and Applied Consultants, Inc (collectively, "Applied"), and administered by Defendant Metropolitan Life Insurance Company ("MetLife"). The Plan named Plaintiff as the primary beneficiary. Although Glenn initially requested the coverage in March 2013, it did not become effective until August 2013. On July 9, 2015, Glenn committed suicide. Plaintiff's claim for benefits under the Plan was denied because the Plan excludes payment in the event that the insured commits suicide within two years of the date the insurance took effect.

The following facts are undisputed. On February 20, 2013, during the open enrollment period for the March 1, 2013 plan year, Glenn completed Applied's online enrollment form requesting $400,000 in life insurance coverage. As part of the application, Glenn was required to complete a Statement of Health form. The Statement of Health form instructed the "Recordkeeper," defined as the "Group Customer, a Third Party Administrator, or MetLife," to fill in the Group Customer Information and Insurance Information sections. The form instructed the employee to fill in the remainder of the form and send it directly to MetLife. Glenn filled out a Statement of Health form on March 13, 2013. Glenn's form requested only $200,000 of coverage and was missing information from the Insurance Information section, including his date of hire and annual salary. Glenn submitted the form to Applied. The same day, Applied submitted the form to MetLife, which received it on March 14, 2013.

MetLife's application process required that Glenn undergo a paramedical exam, which was scheduled by a third-party provider. Glenn's application was terminated in Applied's system on June 18, 2013 for the failure to complete a paramedical exam. On July 5, 2013, the paramedical exam was completed. MetLife received the results on July 10, 2013. On July 11, 2013,

2

MetLife approved Glenn for $200,000 of coverage. Glenn's application to Applied was reinstated on July 18, 2013 upon approval from MetLife. The insurance coverage was given an effective date of August 1, 2013. During the 2015 open enrollment period, Glenn obtained an additional $240,000 in coverage.

Glenn committed suicide on July 9, 2015. Plaintiff submitted a claim for life insurance benefits to MetLife on July 10, 2015. MetLife issued a denial of benefits on December 18, 2015 based on the Plan's two-year suicide exclusion. MetLife completed the administrative appeal of Plaintiff's claim on June 3, 2016, upholding the denial of benefits. In such an event, the Plan requires that all premiums paid be refunded. MetLife refunded the premiums paid toward Glenn's coverage in two parts, a check issued to Applied in July 2016 and a credit on Applied's August 2016 invoice. Applied refunded the premium amounts paid by Glenn to Plaintiff on November 11, 2016.

Defendants additionally submit evidence of the following. MetLife mailed the Statement of Health form back to Glenn on March 21, 2013 because it was missing his date of hire and annual salary. MetLife received a completed Statement of Health form from Glenn on April 5, 2013. MetLife submitted an order for a paramedical exam to a third-party vendor on April 17, 2013. On May 18, 2013, noting that the paramedical exam had not been completed, MetLife sent a follow-up to Glenn. When the policy was ultimately approved, Glenn was surprised to learn that he only received $200,000 in coverage when he elected $400,000 during the online application. Applied explained that the Statement of Health form that Glenn completed only requested $200,000. In response, Applied offered him the opportunity to undergo a new paramedical examination and submit a new Statement of Health form to obtain the additional coverage. Glenn declined to do so at that time or during the 2014

open enrollment period. Defendants submit emails and activity records from their employees describing this chain of events after the fact. Plaintiff does not present any evidence to the contrary, but points out that Defendants have not produced the original records referenced in the description of events.

Plaintiff makes the following claims: 1) for equitable relief as a remedy for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3) in failing to timely bind coverage at the requested amount; 2) for benefits under the terms of the plan pursuant to 29 U.S.C. § 1132(a)(1)(B), either as reformed following a grant of equitable relief on Claim 1 or as written; 3) for penalties pursuant to 29 U.S.C. § 1132(c)(1) for Defendants' failure to furnish plan documents upon request; and 4) for attorney's fees pursuant to 29 U.S.C. § 1132(g)(1).[1]

Pursuant to this Court's briefing order, all parties now move for summary judgment on Plaintiff's four claims. The Court will address each claim in turn.

## LEGAL STANDARD

Summary judgment is appropriate if "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations. . . , admissions, interrogatory answers, or other materials" "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3]

---

[1] *See* Doc. 45.
[2] FED. R. CIV. P. 56 (2012).
[3] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[4] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[5] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[6] "In response to a properly supported motion for summary judgment, the nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial."[7] The Court does "not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[8] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[9]

To the extent that any of Plaintiff's claims involve a review of the Plan administrator's interpretation of the Plan and determination of eligibility for benefits, such claims will be determined under the abuse of discretion standard of review.[10] Review for abuse of discretion "is the functional equivalent of

---

[4] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir. 1997).
[5] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).
[6] Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).
[7] Johnson v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[8] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 393–94 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).
[9] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).
[10] *See* Doc. 27; Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).

arbitrary and capricious review."[11] "A decision is arbitrary if it is 'made without a rational connection between the known facts and the decision.'"[12]

## LAW AND ANALYSIS

I. **Plaintiff's Claim for Breach of Fiduciary Duty**

Plaintiff alleges that Defendants, as administrators of the Plan, breached their fiduciary duties to Plaintiff and seeks equitable relief as a result. Section 1132(a)(3) allows a beneficiary of an ERISA plan to obtain "appropriate equitable relief" to redress violations or enforce provisions of ERISA.[13] Under an ERISA plan, a fiduciary must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries" and do so "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."[14] An employee benefit plan must name one or more fiduciaries who have control and authority to manage the plan.[15] ERISA also makes any person a fiduciary of a plan to the extent that he "has any discretionary authority or discretionary responsibility in the administration of such plan."[16] This definition both broadens the pool of who can become a fiduciary, but also

---

[11] Anderson v. Cytec Indus., Inc., 619 F.3d 505, 512 (5th Cir. 2010).
[12] *Id.* (quoting Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc., 168 F.3d 211, 215 (5th Cir. 1999)).
[13] 29 U.S.C. § 1132(a)(3).
[14] *Id.* § 1104(a)(1).
[15] *Id.* § 1101(a).
[16] *Id.* § 1002(21)(A); *see also* Landry v. Air Line Pilots Ass'n Int'l AFL-CIO, 901 F.2d 404, 418 (5th Cir. 1990), *opinion modified on denial of reh'g* (Apr. 27, 1990).

narrows the context in which each fiduciary owes its duty.[17] Duties that are merely clerical do not give rise to a fiduciary relationship.[18]

Plaintiff identifies several equitable remedies available to her: reformation, surcharge, and equitable estoppel. Reformation requires a plaintiff to show either a mutual mistake of both parties or the mistake of one party coupled with fraud or inequitable conduct by the other.[19] Surcharge requires a plaintiff to show that a) the defendant owed the plaintiff a fiduciary duty, b) the defendant breached that duty, c) plaintiff suffered actual harm, and d) defendant's breach of duty was the cause of plaintiff's harm.[20] Equitable estoppel requires a plaintiff to prove "(1) a material misrepresentation; (2) reasonable and detrimental reliance upon the representation; and (3) extraordinary circumstances."[21]

Both Applied and MetLife argue that Plaintiff cannot bring a cause of action under § 1132(a)(3) for equitable relief because a remedy exists under § 1132(a)(1)(B) and the terms of the Plan. Previously, this Court held that the substance of the relief that Plaintiff seeks—redress for the failure of

---

[17] *See* Kirschbaum v. Reliant Energy, Inc., 526 F.3d 243, 251 (5th Cir. 2008); *Landry*, 901 F.2d at 418.

[18] *See* 29 C.F.R. § 2509.75–8 (listing clerical tasks that do not give rise to a fiduciary duty); Moon v. BWX Techs., Inc., 577 F. App'x 224, 230 (4th Cir. 2014) (holding that an employer to whom a former employee continued to make premium payments was not acting as a fiduciary in accepting the payments and not informing the employee that he was no longer eligible for the plan); Tocker v. Kraft Foods N. Am., Inc. Ret. Plan, 494 F. App'x 129, 131 (2d Cir. 2012) (holding that an individual mid-level manager who communicated plan information to an employee was not a fiduciary); Slater v. Sw. Research Inst., No. SA-12-CV-1205-XR, 2013 WL 6835230, at *3 (W.D. Tex. Dec. 23, 2013) (holding that an employer's open enrollment period and the provision of a system to transmit elections to providers during that period did not involve a discretionary function, and that, regardless, an ERISA fiduciary owes no duty to ensure that employees make elections in their best interest).

[19] *See* Amara v. CIGNA Corp., 775 F.3d 510, 525 (2d Cir. 2014); Silva v. Metro. Life Ins. Co., 762 F.3d 711, 723 (8th Cir. 2014); Sealey v. Johanson, No. 3:15CV137-DPJ-FKB, 2016 WL 1273882, at *4 (S.D. Miss. Mar. 29, 2016).

[20] CIGNA Corp. v. Amara, 563 U.S. 421, 444 (2011).

[21] Mello v. Sara Lee Corp., 431 F.3d 440, 444–45 (5th Cir. 2005).

Defendants to timely bind the insurance policy—is equitable in nature and separate from that available under the Plan, and therefore appropriate for § 1132(a)(3).[22] Nothing in the evidence submitted changes that conclusion.

**A. Defendant Applied's Breach of Fiduciary Duty**

Plaintiff specifically alleges that Defendant Applied breached its duties to Plaintiff as a Plan fiduciary by: 1) failing to fill in Glenn's employment start date and salary information on the first Statement of Health form, 2) failing to notify MetLife that Glenn had applied for $400,000 in coverage through the online system, and 3) failing to take corrective measures to bind life insurance in the amount of $400,000 as Glenn originally requested.

While the Statement of Health form clearly required Applied to fill in Glenn's hire date and salary, Applied's failure to do so was not a breach of fiduciary duty because the required act was merely clerical. Fiduciary duties in the ERISA context extend only to discretionary functions exercised in the administration of a plan.[23] Applied was not exercising any discretionary function when it failed to fill out the Statement of Health form. Therefore, Applied did not breach a fiduciary duty.

Plaintiff mistakenly relies on *Strom v. Goldman, Sachs & Co.* as implicitly holding that an employer owes a duty to an employee to promptly process life insurance application forms.[24] The Second Circuit, however, expressly disclaimed any such implication.[25] The holding of *Strom* was strictly limited to whether the relief that plaintiff sought was equitable in nature.[26]

---

[22] Doc. 64 at 4–5; *see also* Gearlds v. Entergy Servs., Inc., 709 F.3d 448, 452 (5th Cir. 2013).
[23] *See supra*, n.18.
[24] Strom v. Goldman, Sachs & Co., 202 F.3d 138, 143 (2d Cir. 1999).
[25] *Id.* at 143 n.5 ("As Goldman does not contend that the complaint does not allege facts which, if proved, would amount to a violation of [the section of ERISA setting forth the duties of a fiduciary], we express no opinion on that point.").
[26] *See id.* at 150.

8

Plaintiff also cites to *Mauroner v. Massachusetts Indemnity & Life Insurance Co.*, which held that an insurance company has a duty under Louisiana tort law to process applications that it receives in a timely manner.[27] To the extent that a case decided under the Louisiana Civil Code is even persuasive authority for matters governed by the federal common law of trusts, the case provides no guidance on the nature of the duties of an employer to fill in portions of an application for insurance from a third party.[28]

In *Hughes v. Legion Insurance Co.*, however, the district court did find that an employer breached its fiduciary duty by failing to properly enroll an employee's child in their health insurance plan and misrepresenting that the child had been enrolled.[29] There, the employer actually handled and completed all forms between the employee and insurance provider. The provider informed the employer that the employee's application was missing information. The employer failed to provide the required documents, but repeatedly represented to the employee that the child was enrolled. Here, Applied did not take on the role of intermediary between the employee and insurance provider, did not make any misrepresentations, and did not perform the function of evaluating whether coverage had been bound. Because Applied was performing a clerical function, rather than exercising discretion, Applied owed Plaintiff no fiduciary duty.

Even if Applied had breached a fiduciary duty that it owed, Plaintiff cannot prove that Applied's actions caused her harm. Plaintiff presents no evidence of a mistake or misrepresentation, as required for reformation or equitable estoppel, and therefore the only equitable relief available to Plaintiff

---

[27] Mauroner v. Mass. Indem. & Life Ins. Co., 520 So. 2d 451, 455–56 (La. App. 5 Cir. 1988).
[28] *See id.*
[29] Hughes v. Legion Ins. Co., No. H-03-0993, 2007 WL 781951, at *1, 5 (S.D. Tex. Mar. 12, 2007).

is surcharge.[30] One of the elements of a claim for surcharge is that the defendant's breach of duty caused plaintiff's harm.[31]

Glenn sent the incomplete form to Applied on March 13, 2013, who then forwarded it to MetLife. MetLife returned the form to Glenn requesting the additional information on March 21, eight days later. Assuming that nothing else changed and the entire timeline of Glenn's application moved forward by eight days, MetLife would have approved the coverage on July 3, 2013. In that case, the coverage would still have become effective on August 1, 2013, the first day of the month after the application was approved. Plaintiff argues that the delay was actually 24 days, the time from when Glenn submitted his initial Statement of Health form to when he submitted the complete version. There is no reason, however, to attribute to Applied the sixteen days between when Glenn received the incomplete form and instructions on how to complete it and when MetLife received the complete form.

Moreover, Applied's failure to fill out the missing information was not the proximate cause of Plaintiff's injury.[32] Any delay attributable to Applied made up only a small part of the overall delay between when Glenn first filled out his form and when the insurance application was approved. The other delays—Glenn's own delay in returning a completed Statement of Health form to MetLife and the delay in obtaining a paramedical exam—were intervening causes significant enough to attenuate the connection between Applied's acts and Plaintiff's injury. Similarly, Glenn's suicide is a superseding cause. Finally, again assuming that Applied owed a fiduciary duty at all, the scope of

---

[30] *See CIGNA Corp.*, 563 U.S. at 444; *Amara*, 775 F.3d at 525; *Mello*, 431 F.3d at 444–45.
[31] *CIGNA Corp.*, 563 U.S. at 444.
[32] *See* William A. Gregory, *The Fiduciary Duty of Care: A Perversion of Words*, 38 AKRON L. REV. 181, 183 (2005) (explaining that the duty of care, even in the context of the responsibilities of a fiduciary, is a fundamentally a negligence concept).

the duty to complete two boxes on a form would not extend to the risk that an insured would commit suicide before the Plan's exclusion expired. Because Applied's contribution to Plaintiff's injuries was minor, superseded, and beyond the scope of any duty to fill out information on a form, Plaintiffs cannot, as a matter of law, establish that Applied was the legal cause of Plaintiff's injuries.

The other two breaches by Applied that Plaintiff identifies involve the discrepancy between the amount of insurance coverage requested on the online application and the Statement of Health form. Such claims only offer relief if the suicide exclusion does not bar all coverage in the first place. Because this Court ultimately upholds the exclusion, it does not reach the issue of whether Applied breached a duty relating to the amount of coverage. Accordingly, Defendant Applied is entitled to summary judgment on Plaintiff's claim against it for breach of fiduciary duty.

### B. Defendant MetLife's Breach of Fiduciary Duty

Plaintiff specifically alleges that Defendant MetLife breached its duties to Plaintiff as a Plan fiduciary by: 1) failing to make a reasonable effort to obtain the missing information on the Statement of Health form, and 2) failing to process the application in a timely manner. Plaintiff cites no additional case law other than that discussed above.

MetLife does not owe a fiduciary duty in the processing of enrollment applications because such an action is clerical, not discretionary. Plaintiff does not allege that MetLife used its discretion to establish policies and procedures for the application process, rather Plaintiff alleges that MetLife was slow in this instance in the processing of this claim. The actions of MetLife were classic clerical functions that do not give rise to a fiduciary duty.

Assuming, *arguendo*, that MetLife did owe a fiduciary duty to Glenn in the processing of his application, Plaintiff cannot establish the other elements required to recover. With respect to mailing back the form rather than calling Glenn or Applied, Plaintiff fails to present any evidence that mailing was a breach of any standard. With respect to the remainder of the delay in processing Glenn's application, Plaintiff concedes that there is no evidence that MetLife breached any duty or that the process would have been completed sooner if MetLife has acted differently. As Plaintiff states, "there is a complete absence of any evidence of the cause of the delay."[33] Plaintiff bears the burden to establish that MetLife's conduct caused Plaintiff's harm, yet she offers nothing beyond speculation. Accordingly, Defendant MetLife is entitled to summary judgment on Plaintiff's claim against it for breach of fiduciary duty.

## II. Plaintiff's Claim for Benefits Under the Plan Pursuant to 29 U.S.C. § 1132(a)(1)(B)

Plaintiff concedes that, unless this Court grants equitable relief and reforms the Plan, Plaintiff has no claim pursuant to 29 U.S.C. § 1132(a)(1)(B) for benefits under the Plan.[34] By the Plan terms, Plaintiff is due only a refund of premiums paid, which Plaintiff already received.[35] Because this Court holds that Plaintiff is not entitled to reformation of the Plan, Defendants are entitled to summary judgment on Plaintiff's benefits claim.

## III. Plaintiff's Claim for Penalties Pursuant to 29 U.S.C. § 1132(c)(1) for the Failure to Supply Requested Information

Plaintiff makes a claim for statutory penalties for Defendants' failure to provide documents upon request. Section 1132(c)(1) provides that:

---

[33] Doc. 81-1 at 46.
[34] *See* Doc. 94 at 1–2.
[35] *See* Doc. 79-3.

12

> Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.[36]

Section 1024(b)(4) requires that, "The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary[] plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."[37] The "other instruments" clause "appl[ies] only to formal legal documents that govern a plan."[38]

On January 6, 2016, Plaintiff requested from Applied, "a copy of all documentation in Glenn's personal file pertaining to 'any' insurance coverage (including any correspondence, application, request for coverage, and confirmation of coverage) for the entire period of his employment with Applied Consultants."[39] On February 1, 2016, Plaintiff requested from MetLife, "a complete copy of all records showing when my husband, Glenn Lauga, was first offered the insurance coverage by MetLife at his job and all subsequent documentation thereafter."[40] Plaintiff cites to no other requests in the record.

Section 1132(c)(1) applies to neither request because the requests do not ask for the documents specified in § 1024(b)(4). Section 1024(b)(4) does not

---

[36] 29 U.S.C. § 1132(c)(1).
[37] *Id.* § 1024(b)(4).
[38] Murphy v. Verizon Commc'ns, Inc., 587 F. App'x 140, 144 (5th Cir. 2014).
[39] Doc. 79-5 at 44.
[40] Doc. 79-2 at 31.

13

apply to documents generated during an application or claims process, which is the gist of Plaintiff's demand to both Defendants.[41] To the extent that the requests could be construed to demand documents that are covered by § 1024(b)(4), the Court finds the requests obtuse and therefore declines to impose fines.

Plaintiff cites to no other ERISA provision directly mandating that Defendants provide the documents that Plaintiff requested. Instead, Plaintiff argues that the part of ERISA that requires Defendants to furnish information is § 1102(a)(1)(D), which requires an ERISA fiduciary to discharge its duties "in accordance with the documents and instruments governing the plan."[42] Various Plan documents state that beneficiaries have the right to obtain documents relevant to a claim for benefits, and Plaintiff essentially argues that those promises to disclose may be enforced via § 1132(c)(1). However, as a penalty provision, § 1132(c)(1) must be strictly construed.[43] The penalty applies to information that an administrator "is required by this subchapter to furnish."[44] Obligations set forth in plan documents are not requirements imposed by ERISA and therefore do not fall within the narrow purview of § 1132(c)(1). Plaintiff cites to no authority suggesting otherwise.

Accordingly, Defendants are entitled to summary judgment on Plaintiff's claim for penalties under § 1132(c)(1).

---

[41] *See Murphy*, 587 F. App'x at 144; Jordan v. Tyson Foods, Inc., 312 F. App'x 726, 734 (6th Cir. 2008); Currier v. Entergy Corp. Employee Benefits Comm., No. 16-2793, 2016 WL 6024531, at *6 (E.D. La. Oct. 14, 2016).
[42] 29 U.S.C. § 1104(a)(1)(D).
[43] Fisher v. Metro. Life Ins. Co., 895 F.2d 1073, 1077 (5th Cir. 1990).
[44] 29 U.S.C. § 1132(c)(1).

## IV. Plaintiff's Claim for Attorney's Fees Pursuant to 29 U.S.C. § 1132(g)(1)

Plaintiff makes a claim for attorney's fees in this action. Section 1132(g)(1) provides that, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."[45] "[A] fee claimant need not be a 'prevailing party' to be eligible for an attorney's fees award under § 1132(g)(1)," but "must show 'some degree of success on the merits.'"[46] Such success may be neither trivial nor purely procedural.[47] The court ought not conduct a lengthy inquiry into whether the success was substantial or on a central issue.[48] If a party is eligible for a fee award, the court may examine the following factors to determine if an award is appropriate:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.[49]

Plaintiff was not successful on any of her claims asserted in this lawsuit. Plaintiff argues that the return of the premiums paid under the Plan is some success attributable to this action. Defendants dispute that the lawsuit had anything to do with the return of premiums. Regardless, even if the premium return was considered a success of this action, its small size in comparison to

---

[45] *Id.* § 1132(g)(1).
[46] Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 252, 255 (2010) (quoting Ruckelshaus v. Sierra Club, 463 U.S. 680, 694 (1983)).
[47] *Id.*
[48] *Id.*
[49] Victory Med. Ctr. Houston, Ltd. P'ship v. CareFirst of Md., Inc., 707 F. App'x 808, 810 (5th Cir. 2018) (quoting Iron Workers Local No. 272 v. Bowen, 624 F.2d 1255, 1266 (5th Cir. 1980)).

15

the amount that Plaintiff sought falls below the threshold for an award of attorney's fees. Furthermore, there was no evidence that Defendants withheld the premium in bad faith, that their conduct ought to be deterred, or that Plaintiff's action was relevant beyond the particular facts of her case. Accordingly, the Court declines to award attorney's fees under § 1132(g)(1).

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is DENIED and Defendants' Motions for Summary Judgment are GRANTED.

New Orleans, Louisiana this 20th day of July, 2018.

_____
**JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE**